COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS



CITY OF EL PASO, TEXAS, AND
JOHN F. COOK, IN HIS OFFICIAL
CAPACITY AS MAYOR OF EL PASO,

Appellants,

v.

TOM BROWN MINISTRIES, WORD OF
LIFE CHURCH OF EL PASO, TOM
BROWN, EL PASOANS FOR
TRADITIONAL FAMILY VALUES,
AND BEN MENDOZA,

Appellees.

§
§
§
§
§
§
§

No. 08-16-00075-CV

Appeal from the

County Court at Law No. 3

of El Paso County, Texas

(TC# 2011-DCV-02792)

## **O P I N I O N**

This is an interlocutory appeal from an order denying Appellants' plea to the jurisdiction. This case originally began when then-Mayor John F. Cook sued Appellees, in his individual capacity, seeking to enjoin them from circulating recall petitions against him, claiming that their conduct violated the Texas Election Code. In response, Appellees sued the City of El Paso and Cook, in his official capacity as Mayor, claiming that by seeking to "enforce" the Election Code against them in an unconstitutional manner, the City had violated their constitutional right to engage in core political speech in violation of 42 U.S.C. § 1983. Appellees sought damages, injunctive relief prohibiting the City from interfering with Appellees' right to circulate recall

petitions, and a declaratory judgment that certain provisions of the Election Code were unconstitutional. In its plea to the jurisdiction, the City alleged the trial court lacked subject matter jurisdiction in part because Appellees lacked standing. Because we agree that Appellees lack standing, we reverse the trial court's order denying the plea to the jurisdiction and dismiss all of Appellees' claims against the City and Cook in his official capacity.

## BACKGROUND

This case has a long-standing and somewhat infamous background, which we set forth in detail in our opinion in *Cook v. Tom Brown Ministries,* 385 S.W.3d 592 (Tex.App. – El Paso 2012, pet. denied). In that case, we explained that Appellee Tom Brown is the President, Chairman of the Board, and Pastor of a non-profit corporation, the Word of Life Church of El Paso (WOL Church). *Id.* at 594. Until August 2011, Brown also served as the chairman of the El Pasoans for Traditional Family Values (EPTFV), a specific-purpose political committee organized under the Texas Election Code. *Id.* EPTFV was created for the express purpose of supporting the passage of a proposed "traditional family values" city ordinance, which provided that the City of El Paso "endorses traditional family values by making health benefits available only to city employees and their legal spouse and dependent children." *Id.* The ordinance was approved by voters at a referendum election held in November 2010, and would have, effective August 2011, taken away benefits that city employees in domestic partnerships had previously received. *Id.* at 594-95.

But, on June 14, 2011, the El Paso City Council amended the ordinance, effectively restoring domestic partnership benefits. *Id.* at 595. Cook, as the City's then-Mayor, cast the tie-breaking vote. *Id.* at 595. Then-City Council Representatives Susie Byrd and Steve Ortega

2

also voted in favor of the amendment. *Id.* One month later, three citizens (Ben Mendoza, Elizabeth Branham, and Salvador Gomez) filed notices to recall Cook, Byrd, and Ortega. *Id.*

Around this same time, Brown issued a social media statement on the website of Tom Brown Ministries (TBM) that he had decided to support the recall efforts and encouraged the public to call the WOL Church to sign the recall petition.[1] *Id.* In one of his newsletters on the TBM website, Brown included an "Open Letter to City Council," explaining that he had decided to join in the recall efforts because he believed the City Council had "disrespected the will of the people" in amending the family value ordinance, and he encouraged readers to sign and circulate a recall petition against Cook, Byrd, and Ortega. Brown thereafter utilized WOL Church properties and resources to facilitate the recall efforts, including expressing his support of the recall on his website, posting a link on his online newsletters allowing readers to download copies of the petition, and allowing the church's facilities to be used to sign petitions. *Id.* at 595.

It is not clear from the record how much coordination there was between the WOL Church and EPTVF and other incorporated churches in supporting the recall efforts.[2] However, Brown did make a statement in his newsletter that he, along with EPTVF, had decided to join in the recall of Mayor Cook, but that Brown did not intend to "spearhead" the efforts and that EPTFV had recruited two other El Paso citizens to organize the recall efforts for Byrd and Ortega. In a

---

[1] Tom Brown Ministries appears to be a trade name that Brown uses in relation to his church activities. In at least one TBM newsletter, Brown included a "disclaimer" stating that the TBM website was owned by him and not the church, and that Brown in his "official capacity as pastor of Word of Life Church neither encourages [n]or discourages the recall of the Mayor and Representatives."

[2] The decision to become involved in the recall efforts was memorialized in the minutes of the WOL Church Board meeting on June 27, 2011. The minutes indicate that Brown met with a group of local pastors, some of whom expressed their support. At least one other incorporated El Paso church, Jesus Chapel, and its pastor either participated in or expressed an interest in participating in the recall efforts. *See Hoyt v. City of El Paso, Tex.,* 878 F.Supp.2d 721, 724 (W.D. Tex. 2012).

3

subsequent statement on a website entitled "www.recallcook.com," the WOL Church and other local churches, including Jesus Chapel, were listed as locations where registered voters could sign the recall petitions. The statement indicated, however, that the petitions would be located "Off Church Property."

**Cook's Lawsuit**

On September 12, 2011, Cook sued Brown, TBM, the WOL Church, EPTFV, as well as Mendoza, Gomez, and Branham (the three citizens who filed the notices of recall), claiming they were wrongfully circulating the recall petitions against him, Byrd, and Ortega in violation of Section 253.094 of the Texas Election Code, which prohibits corporations from making "a political contribution in connection with a recall election, including the circulation and submission of a petition to call an election."[3] Cook requested injunctive relief to prohibit Appellees from circulating the recall petitions in violation of the Election Code, from engaging in efforts to advertise and promote the recall election on websites affiliated with the church, and from submitting any petitions to the City Clerk that were signed in violation of the Election Code. Cook also sought the withdrawal of all illegally-procured petitions that had been previously submitted to the City Clerk.[4] Although Cook recognized that Byrd and Ortega were not named plaintiffs, he requested that Appellees be enjoined from circulating recall petitions against them as well, and that any illegally-procured petitions with respect to all three be withdrawn and not utilized to determine whether to schedule the recall election. The lawsuit made clear that Cook's

---

[3] Section 253.094 provides in part that: "A corporation or labor organization may not make a political contribution in connection with a recall election, including the circulation and submission of a petition to call an election" and that a violation of this prohibition is a third-degree felony. TEX. ELEC. CODE ANN. § 253.094 (West Supp. 2016).

[4] In his original petition, Cook sued the El Paso City Clerk in her official capacity, seeking an injunction against her from accepting and certifying the petitions that the other defendants were allegedly circulating in violation of the Election Code.

intent was not to seek criminal sanctions, but to "ensure that any recall election is called only after proper and strict compliance with Texas law and the ordinances of the City of El Paso." Cook also requested a declaratory judgment that any signatures gathered at, or at the behest of, the WOL Church and other churches were invalid and not eligible to be utilized by the City to support the recall election. Cook also sought monetary relief in the form of damages and attorney's fees.

Appellees answered the lawsuit and filed a counterclaim against the City of El Paso and Cook, in his "official capacity as Mayor of El Paso," contending that they were acting under color of law to violate Appellees' constitutional right to circulate the recall petitions, which they described as being core political speech.[5] In response, Cook amended his petition and clarified that he was suing only in his individual capacity and denied that he was acting in his official capacity as the City's mayor or under color of law in bringing his lawsuit.

### The Temporary Injunction

The trial court initially entered a temporary restraining order in favor of Cook, enjoining Appellees from circulating the petitions and otherwise supporting the recall efforts, but later dissolved the TRO and ordered the City Clerk to accept all of the disputed recall petitions. *Cook,* 385 S.W.3d at 597. The City Clerk thereafter certified that the requisite number of qualified voters had signed petitions in support of the recall election. *Id.* In response, Cook amended his petition and requested the trial court order the City Clerk to withdraw the certification of the

---

[5] Appellees initially stated that their counterclaim was also against Cook in his individual capacity, but later clarified they were suing Cook only in his official capacity as the City's mayor. Neither the City nor Mayor Cook in his official capacity was a party to the lawsuit at the time they were sued, and it does not appear that Appellees served the City and Cook with citation. However, the City and Cook, in his official capacity, entered appearances in the case by filing various pleadings, and therefore appear to have waived any procedural deficiencies in this regard. *See* TEX. R. CIV. P. 120 (noting that an appearance "shall have the same force and effect as if the citation had been duly issued and served as provided by law").

petitions involving him, Byrd, and Ortega, arguing that all of the petitions were wrongfully certified in violation of the Election Code.

The trial court held a five-day temporary injunction hearing. *Id*. At the hearing, the El Paso District Attorney testified that his office was looking into possible criminal violations of the Election Code with regard to Appellees' conduct. *Id.* As a result, multiple witnesses, including Brown, invoked the Fifth Amendment during their testimony. *Id*. at 597, 602. In particular, among other things, Brown refused to answer questions concerning the relationship between the WOL Church, TBM, and EPTFV, and questions concerning whether the WOL Church was using its property or resources to circulate the recall petitions. *Id.* at 602.

The trial court denied Cook's request for a temporary injunction, finding that Cook's request would have thwarted the "will of the people" to hold a recall election. *Id.* at 607. On January 30, 2012, the City voted in favor of a recall election resolution, and thereafter scheduled a recall election for April 14, 2012. *Id.* at 598-99. Cook filed a timely interlocutory appeal to this Court. *Id.* at 594.

**The *Cook* Opinion**

In our opinion issued on February 17, 2012, two months before the scheduled recall election, we reversed the trial court's decision denying Cook's request for an injunction. *Id.* at 608. We concluded the evidence clearly established a violation of the Election Code, and that Cook was being harmed or was in danger of being harmed by the violations. *Id*. In particular, we concluded that the WOL Church as a corporation had violated Section 253.094(b) of the Election Code, which prohibits a corporation from making a "political contribution in connection with a recall election, including the circulation and submission of petitions to call an election[.]"

*Id*. at 603. Among other things, we concluded that the WOL Church had made an improper political contribution when it "through the use of its website, promoted the circulation of recall petitions, created a portal whereby volunteers could register through WOL Church to circulate petitions, provided the facility and personnel to assist in the signing and circulation of the recall petitions, and notified the public that recall petitions were available for signing at WOL Church."[6] *Id.*

We therefore concluded that Cook had the right to seek appropriate injunctive relief as allowed by Section 273.081 of the Election Code.[7] *Id.* at 607. We ordered the City Clerk "to decertify and return the recall petitions[,]" and held that "[h]aving instructed the City Clerk to decertify the petitions, no election thereon may be called or held." *Id*. at 608. In both our judgment and mandate, we stated that we were ordering the "City Clerk to decertify and return the recall petitions." Notably, our opinion, judgment, and mandate all referred to the "petitions" in the plural and did not specify that the City Clerk was to decertify only the petitions for Cook's recall. Similarly, our opinion stated that "no election thereon may be called or held," and we did not limit this directive to only Cook's recall election. *Id*. at 608. Appellees did not seek a rehearing of our decision.

**Decertification and Cancellation of the Recall Election**

---

[6] We also concluded that EPTFV had violated the Election Code in expending funds to support the recall effort. *Id.* at 606. We noted that Section 253.031(b) prohibits a political committee from knowingly accepting political contributions totaling more than $500 or making or authorizing political expenditures totaling more than $500 when a campaign treasurer appointment for the committee is not in effect. TEX. ELEC. CODE ANN. § 253.031 (West 2010). Although we recognized that a treasurer had been named and appointed for EPTFV, we concluded that EPTFV had made expenditures for a different purpose (to support the recall efforts) than that which was initially stated when the EPTFV was first established (to promote the traditional-family-values ordinance in 2010). *Id.* at 606-07. We concluded that in effect no treasurer had been appointed for any specific-purpose committee with regard to the recall efforts. *Id.*

[7] Section 273.081 of the Election Code provides that: "A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." TEX. ELEC. CODE ANN. § 273.081 (West 2010).

Thereafter, on February 20, 2012, the City Clerk filed three separate certificates, in which she stated that she was decertifying the recall petitions with respect to Cook, Byrd, and Ortega, as ordered by this Court's February 17 opinion. Thereafter, the City Council passed a resolution stating that the City's prior resolution calling for the April recall election was being rescinded. The resolution referenced the City Clerk's decertification of the recall petitions involving Cook, Byrd, and Ortega, and the order of this Court stating that "no recall election may be called or held[.]" The resolution was signed on February 28, 2012, by Cook, in his capacity as Mayor, the City Clerk, and the City Attorney.

## Proceedings in the Supreme Court

Appellees sought review of our decision with the Texas Supreme Court, filing a Petition for Review, a Petition for Mandamus, and a motion seeking emergency relief to stay our decision, asking the Supreme Court to immediately order the City Clerk to re-certify the signatures on the recall petitions so that the April recall election could go forward. The Supreme Court denied the request to stay and asked for full briefing from the parties. In their briefs, Appellees restated their constitutional argument, asserting that they had a constitutional right to engage in petition circulation as core political speech and that our decision deprived them of this right. Appellees did not raise any arguments that the City should have decertified only the Cook petitions or that the City went beyond the scope of our mandate in decertifying the Byrd and Ortega petitions and in cancelling the recall election for Byrd and Ortega as well as for Cook. The Supreme Court denied Appellees' petition for writ of mandamus and petition for review without explanation on December 14, 2012, eight months after the April 2012 recall election date had passed.

## Cook's Remaining Claim for Damages

8

Appellees subsequently filed a motion for summary judgment seeking dismissal of Cook's lawsuit, arguing, among other things, that Cook's claim for injunctive relief was moot in light of our decision decertifying the recall petitions and cancelling the recall election. In response, Cook amended his petition, acknowledging that his claim for injunctive relief was moot due to the cancellation of the election and because he, Byrd, and Ortega were now out of office and barred by term limits from again holding office. Cook stated, however, that he was still seeking damages and fees for Appellees' violations of the Election Code. Cook relied on Section 253.131 of the Election Code, which permits a candidate to seek damages from a party that has engaged in illegal campaign finance activities, pointing out that the term "candidate" includes an officeholder such as himself.[8] Cook opposed Appellees' motion for summary judgment on this same basis.

Cook filed his own motion for partial summary judgment, seeking a judgment that Appellees were liable to him in his individual capacity for their violations of the Election Code provisions, in light of our opinion in *Cook*. Appellees opposed the motion, arguing that two cases issued by the Fifth Circuit Court of Appeals had found the relevant portions of the Election Code unconstitutional and had determined that incorporated churches had a constitutional right to engage in recall efforts. Appellees argued that this Court's prior opinion was wrongfully decided and that consequently Cook had not suffered any damages due to any unlawful conduct on their part.

In April 2016, the trial court granted Cook's motion for partial summary judgment, finding the WOL Church, TBM, Tom Brown, and Salvador Gomez jointly and severally liable to Cook in

---

[8] Section 253.131 provides in part that: "A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section[,]" and that if "the contribution or expenditure is in opposition to a candidate, the candidate is entitled to recover damages under this section." TEX. ELEC. CODE ANN. § 253.131 (West 2010).

his individual capacity for violations of the Election Code. Although the trial court never determined the amount of damages, the parties later settled Cook's claims.

### Appellees' Remaining Counterclaim against the City

In the meantime, the parties also debated the viability of Appellees' counterclaim against the City and Mayor Cook in his official capacity. Appellees contended that circulation of the recall petitions was core political speech and that the City, though Mayor Cook, had acted under color of law to improperly enforce the Election Code against them in an unconstitutional manner and that the City was otherwise unconstitutionally restricting them from exercising their right to speak in violation of 42 U.S.C. § 1983.[9] Municipalities can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief when the municipality's official actions or policies were responsible for a deprivation of rights protected by the Constitution. *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). In their counterclaim, Appellees sought all three forms of relief: (1) a declaratory judgment that the provisions of the Election Code upon which Cook relied in his lawsuit were "unconstitutional on their face and as applied to incorporated churches"; (2) an injunction to prevent both Cook and the City from prohibiting them from circulating their recall petitions; and

---

[9] Section 1983 does not create substantive rights, and instead provides a remedy for deprivations of existing federal rights. *Wilson v. Garcia,* 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985); *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). Appellees claimed that the actions of the City deprived them of their rights to free speech, free exercise of religion, and petition for redress of grievances under the First Amendment, and to equal protection under the Fourteenth Amendment to the United States Constitution. The parties recognize that when a Section 1983 claim is brought against a government official in his official capacity, this is "simply 'another way of pleading an action against [the] entity of which the officer is an agent.'" *Hoyt v. City of El Paso, Tex.,* 878 F.Supp.2d 721, 727 (W.D. Tex. 2012) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

10

(3) unspecified actual and nominal damages, together with the costs and reasonable attorney's fees, they incurred in responding to Cook's lawsuit.[10]

After this Court issued its opinion in the *Cook* case, and after the City cancelled the April 2012 recall election, Appellees amended their counterclaim to clarify that they were still seeking a declaratory judgment and damages for the City's allegedly wrongful past conduct, but were now seeking only prospective injunctive relief against the City, contending they wished to engage in recall efforts with respect to future elected officials, but were "fearful" of doing so because they could face criminal sanctions or the City could unlawfully enforce the Election Code against them. In particular, Appellees claimed, among other things, that the City had ratified Cook's actions in bringing his lawsuit and that the City subsequently acted under color of law to suppress their constitutional rights when it voted to decertify the recall petitions and cancel the April 2012 recall election.

### The City's Plea to the Jurisdiction

The City then filed a combined plea to the jurisdiction and motion for summary judgment, contending the trial court lacked subject matter jurisdiction to hear Appellees' counterclaim. Among other things, the City contended that Appellees lacked standing because the Appellees had not suffered an injury as the result of any municipal action. The City argued that neither the City nor Cook in his official capacity as Mayor had committed any acts that caused Appellees' alleged

---

[10] In addition to their Section 1983 claim for alleged violations of the United States Constitution, Appellees also alleged violations of the Texas Constitution. The parties do not address these allegations in their briefing. We note, however, that there is no private right of action for damages arising from alleged violations of the Texas Constitution. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex. 1995). And, while a plaintiff whose state constitutional rights have been violated may sue for equitable relief, the plaintiff must still establish that a justiciable controversy exists between the parties; otherwise, the court's judgment will constitute "no more than an advisory opinion." *Vriesendorp v. M.D. Anderson Cancer Ctr.,* No. 14-97-00354-CV, 1998 WL 386320, at *3 (Tex.App. – Houston [14th Dist.] July 9, 1998, pet. denied); *see City of Elsa v. M.A.L.,* 226 S.W.3d 390, 391 (Tex. 2007).

11

constitutional injuries and that Appellees' alleged injuries, if any, stemmed only from Cook's conduct in bringing the lawsuit in his individual capacity.[11] The City argued that it did not ratify any actions taken by Cook in his individual capacity, and pointed out that the City actually took a contrary position to Cook during the proceedings, when, contrary to Cook's request, the City Clerk had accepted the recall petitions and scheduled the recall election. The City also pointed out that it had taken a contrary position when the case was pending on appeal in this Court, when it opposed Cook's request to decertify the petitions and to stop the scheduled election, arguing that Cook's claims regarding the validity of the recall petitions had been rendered moot due to the certification of the petitions. *See Cook*, 385 S.W.3d at 608 (recognizing that the City Clerk argued on appeal that the issues raised by Cook in his lawsuit were moot and that the election should not be cancelled). The City further pointed out that this Court had expressly directed the City Clerk to decertify the petitions and not to hold the scheduled recall election. The City argued that, in light of this Court's decision, it had no choice but to decertify the petitions and cancel the election.

In addition, the City argued that this Court correctly decided that the recall petitions had been illegally circulated in violation of the Code, and that we also correctly determined that the Code provisions in question were constitutional.[12] The City also argued that, regardless of the

---

[11] The City pointed out that this Court had expressly recognized that Cook brought his lawsuit in his individual capacity. *See Cook*, 385 S.W.3d at 594. In addition, the City attached an excerpt from Cook's testimony from the temporary injunction hearing, in which he testified he was acting in his own individual capacity in filing suit, and that he was contractually obligated to pay his own attorney's fees, indicating that the City was not supporting his lawsuit.

[12] The City further argued that Appellees who were not corporate entities or officials of the WOL Church (*i.e.*, Branham, Mendoza, Gomez, and Tom Brown Ministries) had no standing to request a declaratory judgment invalidating the Election Code or to request any injunctive relief, because the Election Code limits only the activities of corporations, not individuals. Branham and Gomez were eventually nonsuited (and they in turn dismissed their claims against the City), leaving Mendoza and TBM Ministries as the only individual non-corporate "counterclaim plaintiffs" remaining in the case on appeal.

constitutionality of the Election Code provisions, Appellees had no standing to challenge the constitutionality of the Code provisions or request a preliminary injunction against the City, because neither the City nor its mayor had any authority to enforce the Election Code against them. The City pointed out that pursuant to the City's charter, the Mayor has limited powers that do not authorize him to initiate litigation, enjoin elections, or otherwise enforce the Election Code in his official capacity. The City further noted that it was up to the Texas Ethics Commission to enforce the Election Code in a civil proceeding, and that it would be up to an appropriate law enforcement agency, such as the Attorney General's Office, to bring any criminal action for violations of the Election Code.

In response, Appellees argued that Cook acted in his official capacity as the final policymaker for the City in bringing the lawsuit against them, that the City had ratified Cook's actions in bringing the lawsuit, and that the City acted under color of law when it voted to decertify the recall petitions and cancel the recall elections, not only for Cook, but also for Byrd and Ortega as well. Appellees concluded that all of these actions were taken by Cook and the City pursuant to a city policy, which in turn was the cause of Appellee's alleged constitutional harm, *i.e.*, their inability to engage in recall efforts. Following hearing, the trial court denied the City's plea to the jurisdiction without stating the basis for its decision.

## DISCUSSION

The City argues on appeal that Appellees lacked standing to bring their counterclaim, and that the trial court therefore lacked subject matter jurisdiction to hear this matter. We agree.

### Standard of Review

13

By filing a plea to the jurisdiction, a party challenges the trial court's authority to decide the case.   *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000).   Standing is a question of law we review *de novo*. *Heckman*, 369 S.W.3d at 150; *Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 646 (Tex. 2004); *City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 895 (Tex.App. – El Paso 2016, no pet.).   The party asserting a claim has the burden to affirmatively demonstrate the trial court's jurisdiction.   *Heckman*, 369 S.W.3d at 150; *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004).   In assessing a plea to the jurisdiction, we begin with the live pleadings.   *Heckman*, 369 S.W.3d at 150.   We may also consider evidence submitted to negate the existence of jurisdiction—and we must consider such evidence when necessary to resolve the jurisdictional issue.   *Id.*; *Bland Indep. Sch. Dist.,* 34 S.W.3d at 555.   We construe the plaintiff's pleadings liberally, taking all factual assertions as true.   *Heckman*, 369 S.W.3d at 150; *Miranda,* 133 S.W.3d at 226; *Waterblasting Techs., Inc.*, 491 S.W.3d at 895.   We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. *Heckman*, 369 S.W.3d at 150; *Miranda,* 133 S.W.3d at 227; *see also Waterblasting Techs., Inc.*, 491 S.W.3d at 895 (if the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing the party an opportunity to amend).   And, we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150; *Miranda,* 133 S.W.3d at 227.

## Standing

Standing is a constitutional prerequisite to suit.   *Heckman,* 369 S.W.3d at 150; *Waterblasting Techs., Inc.*, 491 S.W.3d at 898; *see Sw. Bell Tel. Co. v. Mktg. on Hold Inc.,* 308

14

S.W.3d 909, 915 (Tex. 2010). A court has no subject-matter jurisdiction over a claim made by a party who lacks standing to assert it. *Heckman,* 369 S.W.3d at 150; *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304 (Tex. 2008); *Waterblasting Techs., Inc.*, 491 S.W.3d at 898-99; *Ranchero Esperanza, Ltd. v. Marathon Oil Co.,* 488 S.W.3d 354, 358 (Tex.App. – El Paso 2015, no pet.) ("Standing is a component of subject-matter jurisdiction."). When a party lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it. *Heckman,* 369 S.W.3d at 150; *Waterblasting Techs., Inc.*, 491 S.W.3d at 899.

### Standing to Assert a Section 1983 Claim

Both the United States Supreme Court and the Texas Supreme Court have explained that when challenging governmental action, the "irreducible constitutional minimum" of standing consists of three elements:

(1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected or cognizable interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant and not the independent action of a third party not before the court; and

(3) it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see Brown v. Todd,* 53 S.W.3d 297, 305 (Tex. 2001); *see also Joint Heirs Fellowship Church v. Akin,* 629 Fed.Appx. 627, 631 (5th Cir. 2015) (recognizing that a plaintiff in a Section 1983 suit must plead and prove standing to challenge a government's actions as being unconstitutional).

15

In its Plea to the Jurisdiction, the City focuses on the second causal connection element and contends that Appellees lack standing to bring a Section 1983 claim because Appellees have not shown, and cannot show, that any action of the City (and Cook in his official capacity as Mayor) caused them injury.[13]   Section 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.A. § 1983.   In determining whether a plaintiff has standing to bring a Section 1983 action, the initial inquiry must focus on whether two essential elements of such an action are present:   (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.   *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 331–32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also County of El Paso v. Dorado,* 180 S.W.3d 854, 867 (Tex.App. – El Paso 2005, pet. denied).

A municipality may be liable under Section 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011); *see Monell,* 436 U.S. at 692, 98 S.Ct. at 2036.   Importantly, under Section 1983, local governments are

---

[13] Appellees refer parenthetically one time in their pleadings to 42 U.S.C. § 1985, which outlaws a conspiracy to violate federal constitutional rights.   42 U.S.C.A. § 1985.   The same three-part test for standing for a Section 1983 claim applies to a Section 1985 claim, including that there must be a causal connection between the alleged injury and the defendant's alleged conduct.   *Strunk v. Obama,* 880 F. Supp.2d 1, 4 (D.D.C. 2011) (applying the same three-part test to establish standing in a claim for conspiracy in violation of Section 1985 and concluding that the plaintiff failed to demonstrate that he had standing to bring a Section 1985 claim because he failed to demonstrate that there was a "causal connection" between his alleged injury and the defendant's alleged conduct).

responsible for only "their *own* illegal acts." *Connick*, 563 U.S. at 60, 131 S.Ct. at 1359 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986)). Claimants who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Connick*, 563 U.S. at 60-61, 131 S.Ct. at 1359. Official municipal policy includes (i) the decisions of a government's lawmakers, (ii) the acts of its policymaking officials, and (iii) practices so persistent and widespread as to practically have the force of law. *Id.*; *see Pembaur,* 475 U.S at 480-81, 106 S.Ct. at 1298-99. These are the "action[s] for which the municipality is actually responsible." *Connick*, 563 U.S. at 61 (quoting *Pembaur,* 475 U.S. at 479-80, 106 S.Ct. at 1298).

### Cook was not acting Under Color of Law or as a Policy Making City Official in Bringing his Lawsuit

Appellees first argue that they had standing because their constitutional injuries arose from Cook's lawsuit and that Cook brought his lawsuit against them under color of law, because he did so in his official capacity as the City's Mayor or as the City's final policymaker. We disagree. The record is clear that Cook did, and could only have, sued Appellees solely in his individual capacity.

Cook's pleadings explicitly stated that he was suing only in his individual capacity and denied that he was acting in his official capacity as the City's mayor or under color of law in bringing his lawsuit. In addition, the City attached an excerpt from Cook's testimony from the temporary injunction hearing, in which he testified he was acting in his own individual capacity in filing suit, and that he was contractually obligated to pay his own attorney's fees, indicating that the City was not supporting his lawsuit. Further, the evidence showed that the Mayor's limited powers under the City's charter did not authorize Cook to initiate litigation, enjoin elections, or

17

otherwise enforce the Election Code in his official capacity. Moreover, in our *Cook* opinion, we expressly recognized that Cook brought his lawsuit in his individual capacity. *See Cook*, 385 S.W.3d at 594.

Also, Cook brought his lawsuit pursuant to Section 273.081 of the Election Code, which provides for appropriate injunctive relief to a "person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code[.]" TEX. ELEC. CODE ANN. § 273.081 (West 2010). Cook also sought damages under Section 253.131, which allows a candidate to recover as damages twice the value of illegal contributions or expenditures made in opposition to his candidacy. TEX. ELEC. CODE ANN. § 253.131 (West 2010). The Texas Supreme Court recognizes that the right to enforce the Texas Election Code through injunctive relief under Section 273.081 or for damages under Section 253.131 is a *private* right of action for the protection of private rights. *See Osterberg v. Peca,* 12 S.W.3d 31, 48-49 (Tex. 2000) (recognizing that Section 253.131 allows a private civil action and that the person enforcing the law is a private party); *see also Andrade v. NAACP of Austin,* 345 S.W.3d 1, 17 (Tex. 2011) (noting that suits under Section 273.081 of the Election Code are "essentially private in character and are for the protection of private rights"). These Code provisions give only *individual* office holders or candidates the right to seek damages on their own behalf, and do not give them the right to seek relief on behalf of the governmental entity which they serve. In other words, the right to damages and injunctive relief was held by Cook solely in his individual capacity, and he could not seek relief under the Election Code on behalf of the City. Thus, the harm Cook sought to address by seeking damages and injunctive relief against Appellees was strictly private in nature, and he did not, and could not, bring his lawsuit in an attempt to vindicate any right on behalf of the City.

18

Moreover, although Appellees repeatedly refer to Cook's lawsuit as an action by the City to enforce the Election Code against them, neither the City nor Mayor Cook in his official capacity had any authority under the statute to enforce the Election Code. As such, they did not take any action, nor could they have taken any action, to enjoin Appellees from engaging in their recall efforts or to otherwise prosecute them for Election Code violations. *Hoyt,* 878 F.Supp.2d at 735, 738 (noting that City's mayor had no authority to "prosecute" Election Code violators or to otherwise enforce the Election Code). Instead, the only possible entities that could have taken action to directly enforce the Election Code against Appellees would have been the Texas Ethics Commission or an appropriate law enforcement agency, such as the State Attorney General's Office or a local district attorney's office. *Id.* (noting that the Election Code gives the authority to prosecute election law offenses to appropriate law enforcement authorities, such as the Attorney General's Office and local district attorney's offices, and there was nothing in the Code giving a City's Mayor any such enforcement authority); *see also Joint Heirs,* 629 Fed.Appx. at 630 (recognizing that the Texas Ethics Commission is tasked with the responsibility for interpreting and enforcing the Code). Accordingly, we conclude Cook was not acting under color of law or as a City policy making official in suing Appellees, but rather that Cook's requests for damages and injunctive relief under the Election Code were, as a matter of law, brought solely in Cook's individual capacity to enforce a private right of action.

### Cook's Statements Regarding his Perceived Authority to Act for the City did not Transform the Status of his Lawsuit

Appellees, however, point to comments Cook made in his original petition to the effect that he was acting "pursuant to his oath of office" in bringing the lawsuit, and contend that Cook made public statements that he had the duty as the City's mayor to ensure that the City's election and

19

voting processes, including recall elections, were conducted in a valid manner. Appellees also note that during his testimony at the temporary injunction hearing, Cook acknowledged that he believed he had the right or a special interest by virtue of his elected position as the City's mayor to bring the lawsuit on behalf of Byrd and Ortega. Appellees contend that these statements transformed Cook's private lawsuit into one brought in his official capacity as Mayor on behalf of the City. We disagree.

First, many of the statements Cook made in his pleadings regarding his status as Mayor were made to establish jurisdiction or to state a valid claim for relief under Section 273.081 of the Election Code. In order to plead a valid claim for relief, it was necessary for Cook to allege that he was being harmed by Appellees' alleged violations of the Election Code. This required Cook to explain the nature of his position, and how and why he believed he was being harmed (*i.e.*, threatened with the loss of his position as Mayor) by Appellees' allegedly wrongful recall efforts. Further, to the extent Cook made statements in his original petition that possibly could be interpreted as indicating an intent to bring his lawsuit in his official capacity as Mayor, Cook clarified in subsequent pleadings that he was bringing the lawsuit solely in his individual capacity. In addition, to dispel any notion that the City was somehow behind his lawsuit, Cook provided the trial court with documentation that the City was not funding his lawsuit and that he was responsible for paying for his own legal fees. Cook further provided the trial court with a copy of the City Charter, pointing out that it did not give the City's mayor any authority to bring a lawsuit of any nature on behalf of the City.

Moreover, any statements Cook made in his pleadings allegedly showing an intent to bring his lawsuit in his official capacity as the City's Mayor would be legally incorrect. As discussed

above, it was not legally possible for Cook to bring his lawsuit in his official capacity, and the mere fact that Cook may have misstated his authority in his pleadings does not change that reality. Cook's statements could not transform his lawsuit, which was properly brought in his individual capacity, into one that would have been legally impossible to bring. *See Hoyt,* 878 F.Supp.2d at 743 (simply stating in a pleading that a party has certain powers to act "does not make it so," and instead state law determines the extent of the party's power or authority).

Appellees also find it significant that Cook stated in his pleadings that he was also seeking relief for Byrd and Ortega, claiming that they were also being harmed by Appellees' actions. Appellees assert that if Cook had truly been acting in his individual capacity, he would not have had any right to seek relief on their behalf in his lawsuit. Appellees make the logical leap that Cook therefore must have brought the lawsuit in his official capacity, apparently believing that the only authority to represent Byrd's and Ortega's interests would have derived from Cook's official status as the City's Mayor. Appellees, however, never challenged Cook's authority to bring a lawsuit on behalf of Byrd or Ortega, either in the trial court or in this Court in the prior appeal, and never sought to strike any references to Byrd and Ortega from Cook's pleadings. As such, Cook's statements with respect to Byrd and Ortega remained unchallenged throughout the proceedings in both courts. More importantly, just like Cook's statements about his status as Mayor, Cook's statements about Byrd and Ortega could not transform his lawsuit, which was properly brought in his individual capacity, into one that would have been legally impossible to bring in his official capacity. *See Hoyt,* 878 F.Supp.2d at 743. Merely pleading erroneously that he had the authority to represent Byrd and Ortega did not, and could not, give Cook the authority to act in a manner that was not authorized by the Election Code. Accordingly, we conclude that any

21

statements that Cook made could not serve to transform Cook's private lawsuit into one brought by the City.

### The City did not Ratify
### Cook's Actions in Suing Appellees

Appellees next contend that even if the City was not technically a party to Cook's lawsuit, they have standing because the City ratified Cook's actions, in part by not objecting when Cook made the statements to the effect that he was bringing his lawsuit pursuant to his duties and oath of office as the City's mayor. In particular, Appellees argue that the City had received Cook's pleadings and participated in the hearings in the trial court, and was therefore aware of the statements Cook made implying that he was bringing the lawsuit in his official capacity as the City's mayor. Appellees apparently believe that the City's failure to object in effect constituted a ratification of Cook's authority to bring the lawsuit on the City's behalf, and thereby made them liable for Cook's actions.

Appellees correctly point out that in certain circumstances, if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *See, e.g., Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *see also Harris County v. Nagel*, 349 S.W.3d 769, 788 (Tex.App. – Houston [14th Dist.] 2011, pet. denied) ("ratification is 'the equivalent of authorization, but it occurs after the fact. . . . ' "). Thus, when a "subordinate decides to engage in unconstitutional conduct and the final policymaker reviews and approves that decision before it becomes final, then the governmental entity is liable." *Nagel,* 349 S.W.3d at 788. Further, in a Section 1983 action "causation can be inferred from authorization." *Id.* Thus, if an official policymaker ratified the subordinate's conduct, the fact finder can treat the action as directly authorized or performed by

22

the policymaker and is entitled to infer that this action caused the constitutional violation. *Id.* at 787-88; *see also Hallmark v. City of Fredericksburg,* 94 S.W.3d 703, 707 (Tex.App. – San Antonio 2002, pet. denied) (municipality can be held liable for the illegal or unconstitutional actions of its final policymakers, if the policymakers knowingly ratify the unconstitutional or illegal actions of subordinate officers or employees).

There are several problems with Appellees' ratification theory, however. First, Cook was not acting as a "subordinate" when he brought his lawsuit, and was instead acting as a private party who was enforcing his private rights under the Election Code. Thus, the concept of ratification would not even be applicable to Cook's actions. Further, Appellees have not identified any policymaker who was responsible for the so-called ratification of Cook's actions. Instead, Appellees cryptically state that the City was present during the lower court proceedings and should have lodged an objection to these statements, but they do not identify exactly which City policymaker was present or who they believe should have made the objection.

More importantly, we do not believe that the City had any obligation to object to Cook's statements, or that the City's failure to do so could somehow render the City liable for Cook's private actions. Not only did Cook clarify in his amended pleadings that he was solely acting in his individual capacity, this was the only capacity in which he was entitled to act. We therefore decline to ascribe any significance to the City's alleged failure to object to Cook's actions, and we do not believe that this failure could support any conclusion that the City had ratified Cook's actions in bringing the lawsuit, or that this could cause the City to be liable for any constitutional harm that Cook's actions may have caused Appellees. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 927-28, 99 L.Ed.2d 107 (1988) (municipality could not be held liable

23

in a Section1983 suit for supervisors' actions in wrongfully terminating plaintiff, where the supervisors were not acting in accordance with any municipal policy, and the City's policymakers did not expressly approve of the supervisors' conduct).

In fact, the record indicates that the City actually took positions in the litigation that opposed the relief requested by Cook. Cook initially named the City Clerk as a defendant in his lawsuit and sought to restrain her from accepting or certifying the recall petitions that Appellees had circulated. Further, after the trial court dissolved its initial TRO, the City Clerk certified the recall petitions and the City Council voted to schedule, and did schedule, the recall election for April 2012—an action that was in direct opposition to Cook's private interests. Moreover, when the first appeal was pending in this Court, the City Clerk opposed Cook's request that she decertify the petitions, and instead argued that his claims that the petitions had been gathered improperly were moot, as the petitions had already been certified and an election already scheduled. *See Cook*, 385 S.W.3d at 608.

Accordingly, we reject Appellees' contention that they have standing because the City could be held liable for Cook's actions based on a theory of ratification.

### Voting to Cancel the Recall Election did not Constitute an Official Action or Policy Subjecting the City to Liability

Appellees next argue that they have standing because the City's actions in decertifying the recall petitions and in voting to cancel the recall election after we issued our decision in *Cook* constituted action that was taken by the City under color of law, or derived from an official policy decision made by the City. Appellees point out that the City Clerk, in her official capacity, was responsible for decertifying the recall petitions, and that the election was cancelled by vote of the City Council, which was thereafter memorialized in a Resolution signed by Mayor Cook.

24

Appellees emphasize that these actions were taken by City officials, including Mayor Cook acting in his official capacity, who clearly had the final policy making authority for the City at that time. Appellees note that when a policymaker authorizes the violation of constitutional rights, causation is straightforward, as proof that the policymaker made the decision is generally sufficient to prove causation. *See Bd. of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 405-06, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997); *see also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 252, 101 S.Ct. 2748, 2752, 69 L.Ed.2d 616 (1981) (causation was clear where city council voted to cancel license for concert); *Owen v. City of Independence,* 445 U.S. 622, 629, 100 S.Ct. 1398, 1404, 63 L.Ed.2d 673 (1980) (causation was clear where city council censured and discharged an employee without a hearing).

The City does not dispute that the City Council and Mayor were policymakers with final decision making authority for the City, or that they were technically the actors in decertifying the recall petitions and in cancelling the recall election. But, the City does not concede that their actions were taken as the result of any official policy or that the City was the moving force behind the decision to decertify the petitions and cancel the election. Instead, the City argues that they could not incur any Section 1983 liability because their actions were taken as a direct result of our *Cook* opinion in which we directed the City to take these actions. We agree with the City.

It is "not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Brown,* 520 U.S. at 404, 117 S.Ct. at 1388. Instead, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal

25

action and the deprivation of federal rights." *Id.*; *see also Monell*, 436 U.S. at 691, 98 S.Ct. at 2036 (Congress did not intend to impose liability on municipalities in Section 1983 actions, absent a showing that an "official municipal policy of some nature caused a constitutional tort"); *Dorado*, 180 S.W.3d at 868 (court must consider whether the alleged unconstitutional conduct was "directly attributable" to the governmental entity "through official action or imprimatur"). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. at 1300 (" 'policy' generally implies a course of action consciously chosen from among various alternatives"); *Brown,* 520 U.S. at 403-04, 117 S.Ct. at 1388 (recognizing that the deliberate conduct requirement was necessary to ensure that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality").

Cook had actually sued the City to prevent it from accepting the recall petitions, and during the proceedings, the City accepted the recall petitions and scheduled the recall election. Further, when the case was pending on appeal in this Court, the City opposed Cook's request to decertify the petitions and to stop the scheduled recall election, arguing that Cook's claims regarding the validity of the recall petitions had been rendered moot due to the certification of the petitions. *See Cook*, 385 S.W.3d at 608 (recognizing that the City Clerk argued on appeal that the issues raised by Cook in his lawsuit were moot and that the election should not be cancelled). It was only when we issued our opinion, judgment, and mandate in *Cook* that the City dutifully complied with our

26

facially-valid order and decertified the petitions and cancelled the recall election. A governmental entity does not violate Section 1983 by complying with a facially-valid court order. *See Rodriques v. Furtado*, 950 F.2d 805, 816 (1st Cir. 1991) (hospital's policy of honoring facially valid court orders did not make it liable under Section 1983).

The City's actions in decertifying the recall petitions and in cancelling the recall election were not taken as a matter of deliberate choice, but were instead taken pursuant to the express orders this Court gave the City in our opinion, judgment, and mandate in *Cook*. We specifically directed the City Clerk to decertify the recall petitions, and in response, the City Clerk duly noted that she was decertifying the petitions pursuant to our opinion. *Cook*, 385 S.W.3d at 608. Similarly, we specifically ordered the City to cancel the recall election, and the City's Resolution cancelling the recall election stated that City Council had voted to cancel the election in response to our opinion. In effect, the City was performing a ministerial action in fulfilling our directive, one that it had no choice but to take. *See Downing v. Brown,* 935 S.W.2d 112, 114 (Tex. 1996) (ministerial actions are duties that the law requires must be performed, and which require "obedience," leaving the actor with no discretion or choice); *see also Rosencrans v. Altschuler,* 161 S.W.3d 517, 521 (Tex.App. – Eastland 2004, no pet.) (explaining the distinction between ministerial actions that must be taken in the manner prescribed by law or duty, and discretionary actions involve "personal deliberation, decision, and judgment"). To hold otherwise would mean that in order to avoid Section 1983 liability, the City was required to deliberately ignore our explicit order to decertify the petitions and cancel the recall election. We soundly reject any such rule of law.

Appellees contend, however, that the City did have a choice whether to decertify Byrd's and Ortega's recall petitions and cancel their recall elections as well. According to Appellees, the City incorrectly chose to decertify all three petitions and to cancel the recall election in its entirety. Appellees argue that even if the City acted rightfully in decertifying Cook's recall petition and in cancelling his recall election pursuant to our opinion, it went beyond the scope of our opinion when it also decertified the recall petitions for Byrd and Ortega. Appellees once again point out that if Cook had truly been acting in his individual capacity in bringing his lawsuit, he had no standing or authority to bring a claim on behalf of Ortega and Byrd. They contend that Byrd's and Ortega's interests were therefore not before this Court, and that a proper interpretation of our opinion would have been that we were only ordering the decertification of Cook's petition, and not the decertification of Byrd's and Ortega's petitions as well. We disagree, for the simple reason that our opinion, judgment, and mandate clearly and explicitly ordered the City to decertify all the recall petitions and to cancel the recall election in its entirety.

In our opinion, judgment, and mandate, we did not distinguish between Cook, Byrd, and Ortega, and we did in fact direct the City to decertify the "petitions" without limiting our ruling to only Cook's petition. *Cook*, 385 S.W.3d at 608. We further stated that no recall election could be held based upon those petitions and did not limit our ruling to only Cook's recall election. *Id.* We find it significant that Appellees never sought rehearing or clarification of our opinion, and never took any action to address the scope of our opinion before the April 2012 election date had already passed. In fact, although Appellees sought emergency relief with the Supreme Court shortly after the City decertified all three petitions and canceled the election in its entirety, Appellees did not complain to the Supreme Court that our decision was overly broad or that the

28

City's action was outside the scope of our opinion. Instead, Appellees' arguments in the Supreme Court were focused solely on whether their constitutional rights had been violated by the City's vote to cancel the election, without making any distinction between the cancellation of Cook's recall election and Byrd's and Ortega's recall election.

Accordingly, we conclude that the City's decision to decertify all three petitions and to cancel all three recall elections was not a matter of choice and was not based on any deliberate decision as a matter of official policy, and was instead taken in compliance with our opinion, judgment, and mandate. As such, we conclude the City was not a moving force behind any of the alleged constitutional violations Appellees may have suffered from the decertification of the recall petitions and the cancellation of the recall election so as to give Appellees standing to subject the City to liability under Section 1983.

### Appellees Lack Standing to Assert a Claim for Injunctive Relief against the City

We next consider whether Appellees have standing to bring their counterclaim for injunctive relief against the City. After this Court issued its opinion in the *Cook* case, and after the City cancelled the April 2012 recall election, Appellees amended their counterclaim to clarify that they were now seeking only prospective injunctive relief against the City, contending they wished to engage in recall efforts with respect to future elected officials, but were "fearful" of doing because they could "face criminal sanctions" or the City could unlawfully "enforce" the Election Code against them based on the City's past conduct.

However, as explained above, the City never took any unconstitutional actions against Appellees and never applied any unconstitutional policies against them. Rather, it was Cook, in his individual capacity, who sought redress for private injuries arising from Appellees' alleged

29

violations of the Election Code in circulating the recall petitions, and it was this Court that directed the City to decertify the recall petitions and to cancel the recall election. *See Cook*, 385 S.W.3d at 608-09. The City never engaged in any past unconstitutional conduct toward Appellees, and there is no basis for any fear the City will unlawfully enforce the Election Code against Appellees in the future.

However, merely because the City has not yet engaged in any unconstitutional conduct towards Appellees does not end our inquiry whether Appellees have standing to bring a claim for prospective relief against the City in the form of a "pre-enforcement review" of the constitutionality of the Election Code based on their allegation that they wish to engage in constitutionally protected conduct in the future, which they believe might violate the Election Code and subject them to either a prosecution or an enforcement action. It is well established that a plaintiff who wishes to engage in constitutionally protected activity that is proscribed by statute does not need to first violate the statute and expose himself to arrest or other negative consequences in order to establish an injury for standing purposes, and may instead bring a request for a pre-enforcement review of the statute. *Hoyt,* 878 F.Supp.2d at 731. However, in order demonstrate standing to bring a pre-enforcement review of a statute, the plaintiff must show not only an intention to engage in the proscribed conduct, but that there is a "credible threat of prosecution thereunder." *Id*. (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297-99, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)); *see also Joint Heirs*, 629 Fed.Appx. at 629 (in suit challenging the constitutionality of the Election Code, the plaintiffs were required to establish that they intended to engage in activities proscribed by the Code, and that there existed a "credible threat of prosecution" for doing so).

30

Appellees argue that, contrary to our opinion in *Cook*, they have a constitutional right to engage in recall efforts, as evidenced by several recent federal court decisions, issued after we announced our ruling in *Cook*, in which the Fifth Circuit and the United States District Court for the Western District of Texas have recognized that an incorporated church has a constitutional right to engage in recall efforts, and have interpreted the Election Code in a manner that allows incorporated churches to engage in this conduct. *See, e.g., Hoyt,* 878 F.Supp.2d at 736 (concluding that an incorporated church has the right under both the Constitution and the Texas Election Code to make political expenditures to support a recall election, including the right to circulate recall petitions); *Joint Heirs,* 629 Fed.Appx. at 628-29 (holding that the Texas Election Code does not bar incorporated churches from making political expenditures to support recall efforts, including circulating and submitting recall petitions, using church property to promote the recall efforts and to circulate the petitions, notifying the public that petitions are available at the church for signature, raising and expending funds in support of the recall, and sending out communications with regard to the recall efforts). Appellees assert that they wish to engage in this constitutionally-permitted conduct, yet they fear that they might be the subject of a criminal prosecution or an enforcement action if they did so. Appellees, however, have not shown that they face any credible threat of prosecution or enforcement by the City, nor by law could they face such a credible threat.

The court in *Hoyt* faced a similar challenge from another incorporated church in El Paso, Jesus Chapel, and its pastor, who sued the City and Cook, among others, claiming that they wished to circulate recall petitions against Cook, Byrd, and Ortega for the same reason that Appellees did—because they had voted to amend the family values ordinance. *Hoyt*, 878 F.Supp.2d at 723.

31

The plaintiffs named as defendants Cook, in both his individual capacity and in his official capacity as the Mayor of El Paso, together with the Attorney General's Office and the El Paso District Attorney in his official capacity. *Id.* at 723, 727. The plaintiffs alleged that they had refrained from circulating the recall petitions or otherwise becoming involved in the recall efforts because they feared that the defendants would bring criminal and civil actions against them under Section 253.094(b) (making it a third-degree felony for a corporation to make a political contribution in connection with a recall election, including circulating and submitting recall petitions). *Id.* at 724. The plaintiffs sought a pre-enforcement preliminary injunction to enjoin the defendants from "enforcing the Election Code as applied to Plaintiffs' speech," as well as a declaration that the Election Code is facially unconstitutional. *Id.* at 726.

The plaintiffs argued that they faced a credible threat of prosecution from Mayor Cook, because he had sued Appellees in order to restrain them from circulating their petitions. The plaintiffs claimed they feared that Cook might also file a lawsuit against them, and further alleged that Cook had made a direct threat to enforce the Election Code against them as well. *Id.* at 738. The court noted, however, that even if Cook had made any such threats, they would not constitute credible threats, because Cook had no power to prosecute Election Code violators or to otherwise enforce the Code against the plaintiffs. *Id.* at 738. In particular, the court noted that the Election Code gives the authority to prosecute election law offenses to appropriate law enforcement authorities, such as the Attorney General's Office and local district attorney's offices, and there was nothing in the Code giving a city's mayor any such enforcement authority. *Id.*

Moreover, as the Fifth Circuit has recognized, it is not enough for a plaintiff to allege in a pre-enforcement review case that he has a generalized fear of being prosecuted or threatened with

32

an enforcement action. Instead, there must be a credible threat that the named defendant could bring the enforcement action against him. *See, e.g., Okpalobi v. Foster,* 244 F.3d 405, 419, 426-27 (5th Cir. 2001) (en banc) (concluding injunction granted by the district court was "utterly meaningless" because the defendants had no powers to redress the injuries alleged, and thus the plaintiffs had no case or controversy with these defendants that would permit them to maintain the action in federal court). In order to establish standing and a justiciable controversy between the parties, there must be "an actual enforcement connection—some enforcement power or act that can be enjoined—between the defendant official and the challenged statute." *Id.* at 419; *see also Laird v. Tatum,* 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972) (holding credible threat of enforcement must be objectively reasonable).

In the present case, Appellees have failed to establish any enforcement connection between the City and the challenged statute. The City never took any past actions to enforce the Election Code against Appellees or to prosecute them for any violations of the Election Code, nor did the City or Cook in his official capacity have the legal authority to do so. Appellees express fear that the City will take future action against them based on the City's past conduct—when in fact no such past conduct exists, and when in fact any such future conduct is a legal impossibility.

While we recognize that Appellees may be more hesitant than most to engage in recall activities in light of Cook's prior lawsuit against them, we again must emphasize that Cook brought his lawsuit in his individual capacity to protect his own private interests, under Sections 253.131 and 273.081 of the Election Code, and not in his official capacity on behalf of the City. The possibility that Appellees might once again face such private litigation under these provisions of the Election Code (for example from future City Council members in their individual capacity)

33

"does not constitute a credible threat of enforcement" by an entity authorized to enforce the Election Code, *Joint Heirs*, 629 Fed.Appx. at 631, or a credible threat that the named defendants—the City and Mayor Cook in his official capacity—would or could bring the action against them. *See Okpalobi,* 244 F.3d at 419. In short, the possibility of future litigation by some future office holders in their individual capacity or by those organizations or entities with enforcement power under the Election Code does not constitute a credible threat of future enforcement by the City, who is not authorized to prosecute Election Code violations.[14]

## Appellees Lack Standing to Assert a Claim for Declaratory Judgment Against the City

Likewise, Appellees also lack standing to assert a claim against the City for a declaratory judgment concerning the constitutionality of the Election Code provisions. It is "well recognized that declaratory relief is the proper remedy when challenging the constitutionality of a statute." *Abbott v. G.G.E*, 463 S.W.3d 633, 647-48 (Tex.App. – Austin 2015, pet. denied) (quoting *Rylander v. Caldwell,* 23 S.W.3d 132, 136 (Tex.App. – Austin 2000, no pet.)). A party seeking declaratory relief, however, must show that a requested declaration is not merely an advisory opinion but will resolve a live controversy between the parties. *Id.* at 647. The general test for standing in Texas requires that there is "a real controversy between the parties" that "will be

---

[14] Appellees acknowledge they can no longer remove Cook, Byrd, and Ortega from office, since they have all completed their terms of office and cannot run again due to term limits, but argue their request injunctive relief is not moot because their situation is "capable of repetition but evading review." *See Waterblasting Techs., Inc*., 491 S.W.3d at 906 (recognizing that a claim that has become moot may nevertheless survive under the "capable-of-repetition-yet-evading-review exception to the mootness doctrine"). Appellees contend that if they seek to challenge the constitutionality of the Election Code with regard to their right to support a recall election in the future, their constitutional claim might be rendered moot before it is heard by a court given the tight timeframes in which elections are scheduled. The mootness doctrine, however, applies only to cases in which a justiciable controversy existed between the parties at the time the case arose, but the live controversy ceased to exist because of subsequent events. *See Matthews v. Kountze Indep. Sch. Dist.,* 484 S.W.3d 416, 418 (Tex. 2016). In the present case, Appellees lacked standing from the outset to assert their claims against the City and Mayor Cook in his official capacity. Since there was no justiciable controversy between the parties at the time the case arose, the mootness doctrine and its exceptions have no application and are irrelevant to our standing analysis.

actually determined by the judicial declaration sought." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (quoting *Bd. of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)). As discussed above, Appellees cannot establish standing against the City and Cook in his official capacity, since Appellees' alleged injury, if any, resulted from Cook filing suit in his individual capacity and from this Court's decision requiring the City to decertify the recall petitions and cancel the election. *See Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2136 (the "irreducible constitutional minimum" of standing requires as "a causal connection" that the injury be "fairly traceable" to the challenged action of the governmental defendant and not the action of a third party).

Just as the trial court is barred by Appellees' lack of standing from considering their underlying actions for damages and injunctive relief, the trial court is also prohibited from declaring the constitutionality of the challenged Election Code provisions, because doing so would constitute an advisory opinion, which would, at best, address only a hypothetical injury that Appellees might one day suffer at the hands of another. *See Texas Ass'n of Bus.,* 852 S.W.2d at 444 (an opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury). Because we have no jurisdiction to render an advisory opinion, Appellees' counterclaim must be dismissed in its entirety for lack of jurisdiction. *Id.*; *see also Good Shepherd Med. Ctr., Inc. v. State,* 306 S.W.3d 825, 832 (Tex.App. – Austin 2010, no pet.) (the requirement that there be a justiciable controversy "serves to safeguard the separation of powers by ensuring that the judiciary does not encroach upon the executive branch by rendering advisory opinions, decisions on abstract questions of law that do not bind the parties").

Further, the Declaratory Judgments Act does not provide any separate basis for standing since it is "merely a procedural device for deciding cases already within a court's jurisdiction[.]" *Tex. Ass'n of Bus.,* 852 S.W.2d at 444; *see also Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). The DJA "does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature." *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also Monk v. Pomberg*, 263 S.W.3d 199, 204 (Tex.App. – Houston [1st Dist.] 2007, no pet.) (whether a court has subject matter jurisdiction in a declaratory judgment action depends on whether the underlying controversy is within the jurisdiction of the court).

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction and dismiss with prejudice all of Appellees' claims asserted against the City of El Paso and John F. Cook in his official capacity as the Mayor of El Paso.

STEVEN L. HUGHES, Justice

December 7, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.