

# NUMBER 13-23-00091-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

REYNALDO GONZALEZ JR.,                                        **Appellant,**

**v.**

MORGAN GRAHAM,                                             **Appellee.**

## On appeal from the 107th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

Appellant Reynaldo Gonzalez Jr. appeals from the trial court's denial of his Texas Citizens Participation Act (TCPA) motion to dismiss appellee Morgan Graham's claim brought under § 253.131 of the Texas Election Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003; TEX. ELEC. CODE ANN. § 253.131. By three issues that we have reorganized, Gonzalez argues the trial court erred in denying his motion to dismiss

because: (1) Graham lacks standing to bring her claim; (2) the TCPA applies to his claim and Graham failed to demonstrate a prima facie case with clear and specific evidence; and (3) permitting Graham to bring her claim against Gonzalez violates the First and Fourteenth Amendments of the United States Constitution. *See* U.S. CONST. amends. I, XIV. We affirm.

## I.     BACKGROUND

On December 13, 2021, Gonzalez filed an application to oppose Graham for the office of County Chair for the Cameron County Republican Party. Graham, as the incumbent County Chair, rejected Gonzalez's application for incompleteness. Gonzalez filed a petition for writ of mandamus in this Court, seeking review of Graham's decision. *In re Gonzalez*, No. 13-21-00452-CV, 2022 WL 37769, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 4, 2022, orig. proceeding) (mem. op.). We concluded that "Gonzalez's application failed to comply with the express requirements of the election code," and therefore, "Graham had a ministerial duty to reject Gonzalez's application." *Id.* Gonzalez was ultimately prevented from appearing on the March 2022 Republican primary ballot, and Graham won reelection.

On August 2, 2022, Graham filed her original petition in the underlying case. According to her petition, Gonzalez "failed to abide by the requirements of Title 15 of the Texas Election Code" because he "failed to appoint a campaign treasurer with the Texas Ethics Commission upon becoming a candidate." *See* TEX. ELEC. CODE ANN. § 252.001 (entitled "Appointment of Campaign Treasurer Required"). In addition, Graham alleged that Gonzalez "accepted political contributions and made and/or authorized campaign

expenditures at a time when he did not have a campaign treasurer appointment in effect." *See id.* § 253.031 (entitled "Contribution and Expenditure Without Campaign Treasurer Prohibited"). Therefore, Graham sought to recover damages under § 253.131 of the Texas Election Code. *See id.* § 253.131 ("A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section.").

On November 21, 2022, Gonzalez filed his TCPA motion to dismiss, alleging that Graham's claim was based on or brought in response to his exercise of his First Amendment rights to free speech, to petition, and to freely associate. *See* U.S. CONST. amend. I; TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). He also alleged that the suit was brought in response to conduct protected by § 27.010(b)(1) of the civil practice and remedies code. *Id.* § 27.010(b)(1) (providing that the TCPA applies to a suit arising out of conduct relating to "promotion of a dramatic, literary, musical, *political*, journalistic, or otherwise artistic work" (emphasis added)).

Additionally, Gonzalez argued that Graham lacked standing to bring her claim, as she suffered no injury. Gonzalez specifically alleged that "Graham ran for county chair[] uncontested and spent $0 to defeat her non-exist[ent] political opponent." He further asserted that, to the extent Graham did suffer an injury, it was a "sovereign injury" rather than a "proprietary injury," "[a]nd neither the Texas Election Code, nor the Texas Constitution, authorize private citizens to assert sovereign injuries." Lastly, Gonzalez argued that even if § 253.131 provided standing for politicians to sue their opponents, "then it should hold those sections unconstitutional as applied to Mr. Gonzalez," as "[a]

3

statute purporting to vest individuals with the authority to recover civil damages for violations of campaign finance law cannot override the basic constitutional principle[] of standing."

Attached to Gonzalez's motion to dismiss was his unsworn declaration in which he detailed that he paid a law firm "$6,217.50 to pursue the mandamus action," and "accepted $700 from five friends to help pay [his] attorneys' fees" during a time when no campaign treasurer appointment was in effect. Gonzalez explained that he "relied on the Texas Ethics Commission's [TEC] website, which states 'If you are on an upcoming ballot . . . . , then Texas state law requires all candidates . . . to file a campaign treasurer appointment . . . .'" As he would not be on the upcoming ballot, Gonzalez did not believe he was required to file a campaign treasurer appointment.

Gonzalez also represented that, after Graham filed a sworn complaint on January 19, 2022, "with the [TEC] alleging that [he] had violated the [Texas] Election Code," he returned the $700 he received from friends and filed a campaign treasurer appointment "out of an abundance of caution." According to Gonzalez, Graham's sworn complaint with the TEC was resolved on April 19, 2022, when he signed an "Assurance of Voluntary Compliance." The TEC "amicably settled the issues complained of in this case, assessing no penalties against [Gonzalez] for [his] allegedly belated filings."

Gonzalez also attached to his motion to dismiss: (1) the campaign treasurer appointment filing that was received by the TEC on February 1, 2022; (2) campaign finance reports which itemized the campaign funds accepted and expended by Gonzalez; and (3) campaign finance reports which demonstrated that Graham accepted and

expended no campaign funds in furtherance of her own candidacy.

On December 6, 2022, Graham amended her petition to specify that, in addition to the statutory damages allowed by § 253.131, she also "suffered damages for lost wages and additional unreimbursed fees for legal costs associated with the campaign activities for the Cameron County Primary against Mr. Gonzalez." That same day, Graham filed her response to Gonzalez's TCPA motion to dismiss, in which she argued that the TCPA did not apply to her claim, but even if it did, she had clear and specific evidence to support a prima facie case. Graham further asserted that "if potential candidates fail to follow state [election] law and any opponents are not allowed to seek redress from the judicial branch[,] such prohibition would be chilling on" the exercise of First Amendment rights. Attached to her response were: (1) Gonzalez's campaign finance reports; and (2) Graham's affidavit, in which she averred that Gonzalez's political campaign caused her to miss "40 hours" of work and be personally liable for an undetermined amount of attorneys' fees stemming from the mandamus litigation.

Gonzalez subsequently filed a reply to Graham's response, reiterating much of the same arguments as were raised in his initial motion to dismiss. However, he also addressed Graham's assertion that she suffered injuries in the form of lost wages and potential attorneys' fees, arguing that Graham did not provide clear and specific evidence of these injuries and that her injuries were neither concrete and particularized nor traceable to his conduct.

The trial court denied Gonzalez's motion to dismiss, and this appeal followed.

5

## II.  STANDING

Gonzalez challenges Graham's standing to bring a claim under the election code "because she did not incur any damages." "Because standing is a threshold jurisdictional issue that 'is essential to a court's power to decide a case,' we address that issue before turning to the substance of the TCPA motion." *McLane Champions, LLC v. Hous. Baseball Partners*, 671 S.W.3d 907, 912 (Tex. 2023) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)).

### A.  Applicable Law & Standard of Review

"Standing requires an injury-in-fact that is fairly traceable to the defendant's conduct and likely to be redressed by a decision in the plaintiff's favor." *Abbott v. Harris County*, 672 S.W.3d 1, 8 (Tex. 2023). An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Perez v. Turner*, 653 S.W.3d 191, 198 (Tex. 2022) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 154–55 (Tex. 2012)) (internal quotation marks omitted).

We review the issue of standing de novo. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "In evaluating standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *In re H.S.*, 550 S.W.3d at 155. "A plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

6

**B.      Analysis**

First, we must resolve an ancillary issue. Gonzalez contends that "Graham has no clear and specific evidence of an actual, concrete and particularized, non-conjectural, non-hypothetical injury." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005 ("The court may not dismiss a legal action under this section if the party bringing the legal action establishes by *clear and specific* evidence a prima facie case for each essential element of the claim in question." (emphasis added)). But Gonzalez does not explain why a heightened evidentiary burden should apply when the issue of standing is raised in a TCPA motion to dismiss. We have found no authority suggesting that a novel evidentiary burden is required in this context, and so we decline to adopt such a burden here. *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 22 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("[I]t does not follow that a court must analyze jurisdiction using the TCPA burden-shifting procedure, a mechanism ill-suited for resolving whether a court is authorized to decide a controversy.").

Graham alleged in her live pleading that Gonzalez was liable to her for damages under § 253.131 of the election code, citing both subsections (b) and (c) of the statute. *See* TEX. ELEC. CODE ANN. § 253.131(b), (c). Subsection (b) provides that "[i]f the [unlawful] contribution or expenditure is in support of a candidate, each opposing candidate whose name appears on the ballot is entitled to recover damages under this section." *Id.* § 253.131(b). And subsection (c) provides that "[i]f the [unlawful] contribution or expenditure is in opposition to a candidate, the candidate is entitled to recover damages under this section." *Id.* § 253.131(c).

7

Gonzalez does not dispute that subsections (b) and (c) of § 253.131 apply to Graham's claim. Gonzalez relies on *Spokeo* and *TransUnion*, two recent United States Supreme Court cases, to argue that Graham lacks standing, despite statutory authorization to sue, because she has not suffered an injury-in-fact. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *see also Tex. Ass'n Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("Because standing is a constitutional prerequisite to maintaining a suit under both federal and Texas law, we look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield.").

Certainly, these cases stand for the proposition that a plaintiff will not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341; *see TransUnion*, 141 S.Ct. at 2205. But *Spokeo* and *TransUnion* also recognized that the legislative branch is often well-poised to identify injuries-in-fact and to adopt statutes that provide remedies for those injuries. *See TransUnion*, 141 S.Ct. at 2204 ("Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation."); *Spokeo*, 578 U.S. at 342 (explaining that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and a litigant "need not allege any *additional* harm beyond the one Congress has identified" to have Article III standing); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury

8

required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (cleaned up)).

In any event, we conclude that Graham has adequately demonstrated standing. We address the elements of standing that Gonzalez challenges—i.e., injury-in-fact and causation—in turn.

An injury-in-fact must be concrete and particularized. *Spokeo*, 578 U.S. at 339. A concrete injury is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 340 (first citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); and then citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992) ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."). The United States Supreme Court instructs lower courts to look to "history and tradition" when determining whether a plaintiff's alleged intangible injury provides her with standing. *See TransUnion*, 141 S.Ct. at 2204; *Spokeo*, 578 U.S. at 341. Specifically, the *Spokeo* Court explained that

> [b]ecause the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.

578 U.S. at 340–41. "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in

9

American courts, we do not require an exact duplicate." *TransUnion*, 141 S.Ct. at 2209. "[T]raditional harms may also include harms specified by the Constitution itself." *Id.* at 2204. And "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo*, 578 U.S. at 341.

The supreme court has already recognized that private individuals can have a concrete interest in ensuring that an election is "validly conducted." *Brown v. Todd*, 53 S.W.3d 297, 303 (Tex. 2001); *see Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999). In addition, our constitution specifically authorizes the Legislature to "make such . . . regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box." TEX. CONST. art. 6, § 4. Early on in this state's history, our highest court recognized that if "the preservation and enforcement of the purity of the conduct of elections. . . . cannot be done, then one of the very foundations of our system of government may be seriously impaired." *De Shazo v. Webb*, 113 S.W.2d 519, 524 (Tex. 1938); *see State v. Connor*, 23 S.W. 1103, 1107 (Tex. 1893) ("[T]he public has a right that the ballot shall be protected from fraud . . . ."). In recognition of its duty to defend against election fraud, the Legislature enacted § 253.131 of the election code, and we must afford that decision due respect. *See TransUnion*, 141 S.Ct. at 2204 ("Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant . . . ."). Accordingly, we conclude that Graham had a concrete interest in ensuring that the election was validly conducted. *See Brown*, 53 S.W.3d at 303.

"An injury is particularized for standing purposes if it affects the plaintiff in a

10

personal and individual way." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (citing *Spokeo*, 136 S.Ct. at 1548) (cleaned up). Gonzalez argues that only the State of Texas has standing in this case to enforce a violation of the election code. But the supreme court has specifically recognized § 253.131 as a right available to private individuals to ensure compliance with campaign finance requirements. *See Osterberg v. Peca*, 12 S.W.3d 31, 49 (Tex. 2000) ("Because state resources for policing election laws are necessarily limited, in many cases [§] 253.131 is likely to provide the only viable means of enforcing reporting requirements."); *see also City of El Paso v. Tom Brown Ministries*, 505 S.W.3d 124, 139 (Tex. App.—El Paso 2016, no pet.) ("The Texas Supreme Court recognizes that the right to enforce the Texas Election Code . . . for damages under Section 253.131 is a *private* right of action for the protection of private rights." (citing *Osterberg*, 12 S.W.3d at 49)).

In his reply to Graham's response, Gonzalez asserted that the subject matter of Graham's suit consists of "allegations that Mr. Gonzalez attempted to organize a campaign for political office *against her*, including filing an application for a place on the ballot, filing campaign-finance forms, and filing a mandamus lawsuit seeking a place on the ballot." (Emphasis added). Because he categorized the act of filing a mandamus lawsuit as part of an "attempt to organize a campaign for political office against [Graham]," it seems apparent that when Gonzalez paid a law firm "$6,217.50 to pursue the mandamus action" and "accepted $700 from five friends" "[i]n connection with the litigation," he was also "attempt[ing] to organize a campaign for political office against her." In other words, Gonzalez received and spent these campaign contributions and

11

expenditures to specifically oppose Graham. *See* TEX. ELEC. CODE ANN. § 253.131(c).

Our sister court found such an injury sufficient to confer standing in *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d at 24. In that case, Buzbee, a mayoral candidate, sued his political opponent—the incumbent mayor—and an advertiser that provided billboards for the incumbent mayor. *Id.* at 20. The court of appeals agreed with Buzbee that the incumbent mayor and the advertiser acted "in opposition" to his campaign, and it concluded that this resulted in "a concrete, particularized harm that distinguishes [Buzbee's] alleged injury from that of the general public." *Id.* at 24. It further concluded that Buzbee had standing to assert a claim under § 253.131(c) of the election code. *Id.*

The record demonstrates that Gonzalez accepted illegal campaign contributions with the specific intent to oppose Graham's candidacy. Therefore, Graham's injury is distinct from that of the public at large. *See Buzbee*, 616 S.W.3d at 24. The fact that the State might also have the option of enforcing election code violations does not deprive Graham of standing. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("[T]he fact that [an injury] is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts."). We conclude that Graham's alleged injury was sufficiently particularized.[1]

Next, we determine whether Graham suffered an "actual" injury as opposed to a merely "hypothetical" one. *See Inman*, 252 S.W.3d at 304–05. Here, Graham's allegation

---

[1] Because of this, we conclude that Gonzalez's argument that § 253.131 is unconstitutional because it permits Graham to assert a "sovereign injury," rather than a private injury, is unfounded, and we overrule it.

that Gonzalez accepted illegal campaign contributions means that Gonzalez's unlawful conduct tainted the electoral process. Simply because an injury may be difficult to measure does not render that injury "hypothetical." *Cf. Massachusetts v. E.P.A.*, 549 U.S. 497, 521 (2007) (concluding that potential side effects of climate change qualified as an actual injury, sufficient to confer Massachusetts with standing to sue the EPA for failing to regulate greenhouse gas emissions); *Tex. Propane Gas Ass'ns v. City of Houston*, 622 S.W.3d 791, 800 (Tex. 2021) ("TPGA has standing to challenge regulations it claims the City had no authority to enact."). That Graham eventually won the election and that Gonzalez returned the campaign contributions does not render the injury hypothetical. At best, these are facts that relate to the merits of Graham's case, not whether she suffered any injury. We conclude that Graham suffered an injury-in-fact.

Additionally, Gonzalez's conduct is fairly traceable to Graham's injury. There is no need to show the exact responsibility the defendant bears for the alleged injuries, so long as a plaintiff can trace these injuries to the defendant's conduct. *Heckman*, 369 S.W.3d at 157. Here, Gonzalez's unlawful campaign finance activities violated Graham's interest in ensuring the election was validly conducted. We therefore conclude Graham has demonstrated this element of standing.

To summarize, we conclude that Graham has demonstrated an injury-in-fact and causation.[2] Therefore, we further conclude that Graham has standing to bring the

---

[2] Gonzalez does not challenge the redressability component of standing. Nonetheless, we conclude this requirement has also been adequately satisfied. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) ("[W]hen a statute affords a litigant 'a procedural right to protect his concrete interests,' the litigant may establish Article III jurisdiction without meeting the usual 'standards for redressability and immediacy.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))); *see also Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 802 (2021) ("[W]e conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal

underlying claims in this case.

## III.    TCPA

By his second issue, Gonzalez argues that the trial court erred by denying his TCPA motion to dismiss.

### A.    Standard of Review & Applicable Law

"The [TCPA] is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). "A two-step process is initiated by motion of a defendant who believes that the lawsuit responds to the defendant's valid exercise of First Amendment rights." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). It is the movant's initial burden to prove that the plaintiff's claim "is based on or is in response to" the movant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the non-movant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c); *Buzbee*, 616 S.W.3d at 26. This "clear and specific" evidentiary standard "does not impose a higher burden of proof than that required of the plaintiff at trial." *In re Lipsky*, 460 S.W.3d at 591.

"We construe the TCPA liberally to effectuate its purpose and intent fully." *Buzbee*, 616 S.W.3d at 26. "We consider de novo the legal questions of whether the Act applies

---

right."); *Brown v. Todd*, 53 S.W.3d 297, 303 (Tex. 2001) (providing that "the judiciary's limited role in elections disputes" is to remedy "elections tainted by fraud, illegality, or other irregularity").

14

and whether a non-movant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims." *Id.* We view "the pleadings and evidence in a light most favorable to the plaintiff non-movant." *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd).

## B. Analysis

Gonzalez and Graham dispute whether the TCPA applies to Graham's claim. Nonetheless, for purposes of our analysis, we will assume without deciding that the TCPA applies.

The second step of the TCPA requires us to examine whether Graham has established through clear and specific evidence a prima facie case for each essential element of her claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590. To succeed on a § 253.131 claim, a plaintiff must show that the defendant knowingly made or accepted a campaign contribution or made a campaign expenditure in violation of Chapter 253 of the election code. TEX. ELEC. CODE ANN. § 253.131(a). To be entitled to damages, the plaintiff must also demonstrate that the contribution or expenditure was made in opposition to the plaintiff's candidacy or in support of the defendant's candidacy. *Id.* § 253.131(b), (c).

### 1. Knowingly Made or Accepted a Campaign Contribution or Expenditure

A claimant is not required to show that the candidate knowingly violated Chapter 253 of the election code. *Osterberg*, 12 S.W.3d at 38. Rather, "'knowingly' applies only to whether a person is making a 'campaign contribution' or 'campaign expenditure.'" *Id.* at 39. A "campaign contribution" is "a contribution to a candidate or political committee that

15

is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." TEX. ELEC. CODE ANN. § 251.001(3). A "campaign expenditure" is "an expenditure made by any person in connection with a campaign for an elective office or on a measure." *Id.* § 251.001(7).

Here, attached to Graham's response to Gonzalez's motion to dismiss were several campaign finance reports. One of these reports covered the period of July 1, 2021, through December 31, 2021. In this report, Gonzalez reported receiving "POLITICAL CONTRIBUTIONS" in the amount of $700 and making "POLITICAL EXPENDITURES" in the amount of $4,000. Gonzalez described the purpose of the expenditures as "legal representation to try to become a candidate after [his] application was rejected." *See id.* Gonzalez swore, "under penalty of perjury, that the . . . report is true and correct and includes all information required to be reported by [Gonzalez] under Title 15, Election Code." *See In re Lipsky*, 460 S.W.3d at 591 (holding that circumstantial evidence can be used to establish a plaintiff's prima facie case under the TCPA). Based on this, we conclude that Graham provided clear and specific evidence that Gonzalez knowingly made or accepted a campaign contribution or expenditure.

### 2. Violated Chapter 253 of the Election Code

Graham specifically alleged that Gonzalez's expenditures and contributions violated § 253.031 of the Texas Election Code. This statute prohibits candidates from "accept[ing] a campaign contribution or mak[ing] or authoriz[ing] a campaign expenditure at a time when a campaign treasurer appointment for the candidate is not in effect." TEX. ELEC. CODE ANN. § 253.031(a) (entitled "Contribution and Expenditure Without Campaign

16

Treasurer Prohibited").

Attached to Graham's response was a copy of Gonzalez's campaign treasurer appointment. The document indicated that Gonzalez made the appointment on January 28, 2022, it was received by the TEC on February 1, 2022, and it was processed by the TEC on February 7, 2022. However, as noted above, the record indicates that Gonzalez both accepted campaign contributions and made campaign expenditures between July 1, 2021, and December 31, 2021. Thus, the record affirmatively indicates that Gonzalez "accept[ed] a campaign contribution or ma[de] . . . a campaign expenditure at a time when a campaign treasurer appointment for the candidate [was] not in effect." *See id.*

Gonzalez argues that he relied on advice promulgated on the Texas Ethics Commission's website "and believed that filing a campaign treasurer's appointment was unnecessary." But, as already discussed above, to demonstrate a prima facie case, Graham was not required to show that Gonzalez knowingly violated the law, just that he knowingly accepted a campaign contribution or made a campaign expenditure. *See Osterberg*, 12 S.W.3d at 38. We conclude that Graham met her burden to demonstrate this element by clear and specific evidence.

### 3. Damages

A claimant's entitlement to damages is determined based on whether the contribution or expenditure is "in support of a candidate" or "in opposition to a candidate." TEX. ELEC. CODE ANN. § 253.131(b), (c). Gonzalez argues that he was never a candidate because his ballot application was rejected, and § 253.131 therefore cannot support Graham's claims. We disagree. "Candidate" is defined in Title 15 of the election code as

"a person who knowingly and willingly takes affirmative action for the purpose of gaining nomination or election to public office or for the purpose of satisfying financial obligations incurred by the person in connection with the campaign for nomination or election." *Id.* § 251.001(1). As examples of an "affirmative action" one might take to be a candidate, the election code lists, *inter alia*, "the filing of an application for a place on a ballot" and "the soliciting or accepting of a campaign contribution or the making of a campaign expenditure." *Id.* § 251.001(1)(B), (G).

Here, it is undisputed that Gonzalez filed an application to run against Graham for the position of County Chair for the Cameron County Republican Party. We have also determined that the evidence is sufficient to show that he accepted campaign contributions and made campaign expenditures. Therefore, we conclude that Gonzalez was a candidate for purposes of § 253.131. *See id.* § 251.001(1)(B), (G).

Graham has made a prima facie showing that, because Gonzalez accepted campaign contributions and made campaign expenditures, Graham, as the opposing candidate whose name appeared on the ballot, is entitled to receive statutory damages in the amount of "twice the value of the unlawful contribution or expenditure" and "reasonable attorney's fees incurred in the suit." *See id.* § 253.131(b), (d). Graham further provided evidence, in the form of Gonzalez's campaign finance reports, to demonstrate the specific value of the unlawful contributions and expenditures for which she seeks to recover. We conclude that Graham has provided clear and specific evidence of this element.[3]

---

[3] Gonzalez argues that awarding Graham damages would constitute a windfall, as Graham has already won the election, she spent no money on her campaign, and it is Gonzalez who has suffered by

18

**C.      Conclusion**

In sum, Graham has demonstrated a prima facie case for her § 253.131 claim with clear and specific evidence, and we therefore conclude that the trial court did not err in denying Gonzalez's motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

### IV.      CONSTITUTIONALITY OF § 253.131

Finally, Gonzalez contends that, as applied to him, § 253.131 violates his First and Fourteenth Amendment rights. *See* U.S. CONST. amends. I, XIV. Gonzalez argued to the trial court that the TCPA applied to Graham's cause of action because it was based on or brought in response to his exercise of his First Amendment rights. However, he did not argue that § 253.131 was unconstitutional as it applied to him because it violated his First or Fourteenth Amendment rights.

The TCPA is not synonymous with the First Amendment. *See Sanchez v. Striever*, 614 S.W.3d 233, 243 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 575 (Tex. App.—Fort Worth 2019, pet. denied). Though we may look to constitutional jurisprudence when analyzing the TCPA's applicability, *see Sanchez*, 614 S.W.3d at 24, whether the TCPA protects certain speech and whether a separate statute is unconstitutional because it chills speech are two different questions. Therefore, because the trial court has not had the opportunity to consider Graham's challenge to § 253.131's constitutionality under the First Amendment, we must refrain from addressing the issue. *See* TEX. R. APP. P. 33.1; *see also Perry v. Smyth*, No. 13-19-

---

not being allowed to run for County Chair and having his reputation tarnished for making a simple mistake. The appropriate audience for this argument is the ultimate factfinder in the case or the Legislature, not us.

19

00301-CV, 2020 WL 2776527, at *2 (Tex. App.—Corpus Christi–Edinburg May 28, 2020, no pet.) (mem. op.) ("The requirement for error preservation extends to constitutional challenges, including challenges that a statute is unconstitutional on its face or as applied to the appellant.").

Gonzalez's Fourteenth Amendment challenge fails for the same reason. Gonzalez argues that applying § 253.131 to him violates his substantive due process rights. *See* U.S. CONST. amend. XIV. But he did not seek a ruling on this claim below. *See* TEX. R. APP. P. 33.1; *see also Perry*, 2020 WL 2776527, at *2.

Therefore, we overrule this issue.

### V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
18th day of January, 2024.